
IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

TITO ABBO,

    Plaintiff,

vs.

STATE OF WYOMING, WYOMING
HIGHWAY PATROL; AARON
KIRLIN, Individually and in his Official
Capacity; BEATRIZ REGINA
SCHULMEISTER, Individually and in
her Official Capacity and JOHN DOES 1
THROUGH 20,

    Defendants.

Case No. 12-CV-249

---

## ORDER DENYING PLAINTIFF'S MOTION TO STRIKE QUALIFIED IMMUNITY DEFENSE, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

This matter comes before the Court on Plaintiff's motion to strike the qualified

immunity defense asserted by Defendants, and on cross-motions for summary judgment.[1]

Plaintiff Tito Abbo (Abbo) sues Defendants for an alleged deprivation of his civil rights

---

[1] Plaintiff's motion for summary judgment is on the issue of civil rights liability only.

arising from an October 30, 2011 traffic stop performed by Defendant Schulmeister. This stop resulted in a seizure of Abbo and a search of his vehicle by Defendants Schulmeister and Kirlin. Abbo alleges that the actions of Schulmeister and Kirlin violated his Fourth, Fifth and Fourteenth Amendment rights against unreasonable searches and seizures and against unlawful deprivations of liberty without due process of law, thereby resulting in a false arrest and false imprisonment. Abbo also alleges that Schulmeister and Kirlin conspired to violate his civil rights to unlawfully confine Abbo and conduct an illegal search. Finally, Abbo alleges that Defendant Wyoming Highway Patrol has adopted an unconstitutional policy and practice of conducting illegal searches of motorists, particularly out-of-state motorists, using pretextual grounds.

For the reasons that follow, the Court will grant Defendants' motion for summary judgment, concluding that qualified immunity protects the actions of Defendants Schulmeister and Kirlin. Given that there are no facts to support a claim of a § 1983 conspiracy, Abbo's conspiracy claim must be dismissed. Finally, sovereign immunity protects the Wyoming Highway Patrol and any employee alleged to be acting in an official capacity. Therefore, these claims must be dismissed.

## BACKGROUND

All parties agree that the material facts are undisputed. On October 30, 2011, Schulmeister stopped Abbo's vehicle for speeding at a rate of 105 mph in a 75 mph zone on westbound Interstate 80. Gregory Mercado was driving Abbo's vehicle and Abbo sat in the front right passenger seat of the vehicle. Schulmeister initiated her lights and sirens to pull the car over, but the vehicle did not stop.[2] When Schulmeister approached the vehicle, both the driver and Abbo rolled down their windows.[3] After the windows were rolled down and during a discussion with Abbo, Schulmeister testified that she was positive she smelled the odor of raw marijuana coming from the vehicle. Schulmeister returned with the driver to her vehicle and called for Kirlin to come to the scene. When Kirlin arrived she told him, "I need

---

[2] Abbo testified they did not stop because the emergency lights were initially turned on, but were then turned off. He said once they heard the sirens, they pulled over. Schulmeister testified she had the lights and sirens on continually and, when the vehicle did not stop, she eventually drove over the fog line to be visible in the passenger's rear-view mirror and get the vehicle to stop. The vehicle did not stop for a little more than two miles after she initiated the stop.

[3] Schulmeister testified that it was significant to her that both windows were rolled down at the same time because, in her experience, people do that because they want all the air to come through the vehicle so the officer cannot smell the interior of the vehicle.

3

your nose." Although Schulmeister smelled the odor of marijuana, she also smelled "sage" which she said was "throwing her off."[4]

Kirlin spoke to Abbo through the passenger window and also smelled the odor of raw marijuana. He directed Abbo to exit the car. Abbo rolled up the windows, took the keys from the ignition and put them in his pocket, exited the vehicle, and locked its doors. Kirlin then patted down Abbo, who told him "I don't consent to searches." Kirlin responded that it did not matter, that he smelled marijuana, and the vehicle was going to be searched. Abbo become somewhat agitated and said that it would be fine for a drug dog to be called to confirm the suspicion. Kirlin handcuffed Abbo and put him in the back of his patrol car, where he remained for about 45 minutes. A thorough search of the vehicle ensued but no marijuana was found. The search did reveal several items which Schulmeister testified were consistent with drug trafficking including rolling papers without tobacco, an electric screwdriver, an inverter, cellophane plastic wrap with black duct tape, three cell phones and an abundance of herbs and salves deemed as possible masking agents.

After the search the motorists were released. The entire stop is captured on a video recording.

---

[4]Schulmeister testified she could smell raw marijuana and then she would smell sage, so the smell of raw marijuana was not constant.

Both Schulmeister and Kirlin have received basic and advanced drug interdiction training, which included smelling marijuana in raw and burned form. They also have had experience smelling raw marijuana during their time as Highway Patrol troopers. While both troopers testified that raw marijuana has a distinct smell, neither indicated any training where they could compare the smell of marijuana to other plants.

## STANDARD FOR EVALUATION OF QUALIFIED IMMUNITY

Defendants assert qualified immunity in their summary judgment motion, thus the burden shifts to Plaintiff to show that: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Becker v. Bateman*, 709 F.3d 1019, (quotation omitted). In determining whether a right is clearly established, "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, —— U.S. ——, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). This Court maintains the discretion to decide "which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand."

*Pearson*, 555 U.S. at 236, 129 S.Ct. 808.

## DISCUSSION

Plaintiff's § 1983 Personal Capacity Claims Against the Troopers

In this case there is no dispute that the traffic stop of Abbo and his vehicle was valid at its inception. Abbo was the owner and passenger in a motor vehicle which was traveling well above the posted speed limit. There also does not appear to be any dispute that reasonable suspicion existed to extend the stop as that phrase is defined in this circuit. *See*, *United States v. De La Cruz*, 703 F.3d 1193, 1196 (10th Cir. 2013) and cases cited therein. Rather, Abbo argues that probable cause is not supported by an officer's smell of marijuana alone, particularly where the smell was confounded by the presence of pungent-smelling herbs and no marijuana was found after an exhaustive search.

In turning first to Abbo's § 1983 deprivation of civil rights claim and Defendants' defense of qualified immunity, the scope of this Court's analysis is limited. The issue is not whether probable cause existed, but whether it was clearly established that probable cause **did not** exist. The inquiry thus focuses on whether it would have been clear to reasonable officers in the position of Schulmeister and Kirlin that they lacked lawful authority to search Abbo's vehicle and handcuff and detain Abbo.

6

As to this limited question, the Court concludes that the constitutional rights at issue in this case were not clearly established to inform reasonable officers in the position of the two Highway Patrol troopers that their conduct was unlawful. The troopers confronted a situation where the following significant facts were known by them at the time of the search and seizure: (1) the vehicle was driving 105 mph in 75 mph speed zone; (2) the vehicle did not stop for more than two miles after the officer's lights and siren were activated; (3) both the driver and the passenger (Abbo) rolled their windows down at the same time when the officer first approached; (4) both officers separately smelled the odor of raw marijuana coming from the vehicle; (5) both officers were trained in, and experienced with, smelling raw marijuana, and both testified that raw marijuana has a distinct smell; (6) the conflicting smell of "sage" was considered by both officers as a masking agent; and (7) once Abbo was informed of the detection of the odor, his demeanor changed and he became somewhat agitated.

While the law may be still developing, the Tenth Circuit has made unqualified statements that the odor of raw marijuana alone gives the officers probable cause to believe a crime has been committed or is about to be committed, thus justifying a search. *See United States v. Morin*, 949 F.2d 297, 300 (10th Cir. 1991); *United States v. Bowman*, 487 F.2d 1229, 1231 (10th Cir. 1973)(Border Patrol agents' experience in identifying marijuana by

sight and odor establishes probable cause to search); *United States v. Sperow*, 551 F.2d 808, 811 (10th Cir. 1977)(Court "recognized that marijuana has a distinct smell and that this alone can satisfy the probable cause requirement in a search[.]").

The only case identified by Abbo in opposition to this line of cases and the defense of qualified immunity is *United States v. Nielsen*, 9 F.3d 1487 (10th Cir. 1993). In *Nielsen*, the defendant was stopped for speeding on an interstate highway near Nephi, Utah by a highway patrol trooper. *Id.* at 1488. The trooper claimed that he smelled burnt marijuana coming from the open window of the defendant's vehicle, but the motorist denied having marijuana in the vehicle and consented to a search. In a search of the interior of the vehicle, nothing was found to support an inference of marijuana use. The trooper persisted, however, and searched the trunk of the vehicle over the defendant's objections. Cocaine was found, and the motorist was prosecuted.

On appeal from a denial of defendant's motion to suppress, the Tenth Circuit noted that the case involved an officer claiming to have smelled *burnt* marijuana, and the only required decision was whether that provided probable cause to search a trunk after a consented-to search of the passenger compartment produced no evidence to support the officer's suspicions. Concluding that the smell of burnt marijuana would lead a person of ordinary caution to believe the passenger compartment might contain marijuana, the Tenth

Circuit concluded it did not believe under the circumstances that there was a fair probability that the *trunk* contained marijuana. Therefore, the Tenth Circuit concluded that there was no probable cause to search the trunk.

The *Nielsen* case falls short of informing a reasonable officer that a seizure of Abbo and a search of Abbo's vehicle under the circumstances presented in this case would violate clearly established law. Contrary to Abbo's argument, this Circuit has not clearly established that officers must have something akin to "odor-plus" to establish probable cause in every situation where an officer confronts an odor of marijuana. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588 (2004). Considering the circumstances enumerated above, Schulmeister and Kirlin are entitled to qualified immunity on Abbo's personal capacity § 1983 claims (deprivation of civil rights, false arrest and false imprisonment), because neither trooper violated clearly established law. At most, the law concerning probable cause based on the smell of *raw* marijuana coming from the interior of a vehicle, which happened to also contain other strong plant odors, is fairly debatable, and this conclusion affords the defense of qualified immunity to the two troopers as to Abbo's personal capacity § 1983 claims.

Plaintiff's Civil Conspiracy Claim

Abbo also brings a conspiracy claim under § 1983. Allegations of conspiracy may form the basis of a § 1983 claim. *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. *Id.* "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* (quotation omitted).

Abbo provides absolutely no factual or legal argument in support of his conspiracy claim. All the Court is left to examine are the claims in Abbo's Complaint, which allege "[t]he agreement by the defendants Kirlin and Schulmeister to confine Mr. Abbo and to search his person and vehicle was illegal and constituted a conspiracy, carried out with overt acts on the part of both conspirators, with the object of violating Mr. Abbo's constitutional rights." Doc. No. 1, ¶ 48. These are nothing more than conclusory allegations and the Court cannot reasonably infer that because Kirlin and Schulmeister both separately smelled marijuana coming from inside Abbo's vehicle, they were somehow conspiring with one another to conduct an illegal search of Abbo and his vehicle. Other than telling Kirlin she needed "his nose," Kirlin had no specific information from Schulmeister concerning why she made this request or what the result should be in the event that Kirlin smelled something. Therefore, Abbo has simply failed to carry his burden of alleging the facts necessary to

support his claim of conspiracy under § 1983, and Defendants are entitled to summary judgment on the civil conspiracy claim as well.

## Plaintiff's Official Capacity Claims and Claims Against the Wyoming Highway Patrol

Qualified immunity is available only in suits against officials sued in their personal capacities, not in suits against governmental entities or suits against officials sued in their official capacities. *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). However, the State of Wyoming, Wyoming Highway Patrol and its employees alleged to be acting in their official capacities are arms of the state of Wyoming protected by Eleventh Amendment sovereign immunity. *See Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000) ("[T]he arm-of-the-state doctrine bestows [Eleventh Amendment sovereign] immunity on entities created by state governments that operate as alter egos or instrumentalities of the states." (internal quotation marks omitted)); *Watson v. Univ. Of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) (employees of entity that is found to be an arm of the state, who are sued in their official capacities, also entitled to Eleventh Amendment sovereign immunity).

Abbo directly pleads this case against the State of Wyoming, Wyoming Highway Patrol, and recognizes that "the Defendant Wyoming Highway Patrol is a governmental entity of the State of Wyoming." Doc. No. 1, ¶ 6. Even without this, the Wyoming Highway Patrol is a creature of the State of Wyoming which acts under the direction of the Director

of the Wyoming Department of Transportation, and which is charged with enforcing all the motor vehicle laws of the State. Wyo. Stat. §§ 24-12-101 - 102. As such, the Patrol and any employee alleged to be acting in an official capacity are protected against suit by sovereign immunity.

## CONCLUSION

Given this analysis, the Court concludes that Defendants' Motion for Summary Judgment is GRANTED and Abbo's Motion to Strike Defendant's Qualified Immunity Defense and Motion for Summary Judgment on Civil Rights Liability is DENIED.

Dated this ____ day of September, 2013.

NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE